**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **HEI INVESTMENTS, LLC,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **Case No.:** |
| **v.** | : | |
| | : | **Judge:** |
| **BLACK DIAMOND CAPITAL** | : | |
| **APPRECIATION FUND, LP,** | : | **COMPLAINT  AND** |
| **BLACK DIAMOND GP, LLC,** | : | **JURY DEMAND** |
| **BLACK DIAMOND INVESTMENTS,** | : | |
| **LP, BLACK DIAMOND** | : | |
| **INVESTMENTS, LLC, NICHOLAS** | : | |
| **LATTANZIO, RAY COMMISSO,** | : | |
| **INTERNATIONAL LENDING** | : | |
| **SERVICES and PASQUALE** | : | |
| **MONTESANTI,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

COMES NOW HEI Investments, LLC sometimes referred to as HED III, LLC ("HEI") and files this its Complaint against Black Diamond Capital Appreciation Fund, LP, Black Diamond GP, LLC, Black Diamond Investments, LP, Black Diamond Investments, LLC, Nicholas Lattanzio, Ray Commisso, International Lending Services and Pasquale Montesanti showing the Court as follows:

1

## PARTIES

1.

Plaintiff HEI is a Georgia limited liability company with its principal place of business located at 41 Perimeter Center East, Suite 510, Atlanta, GA 30346. HEI is engaged in the business of hotel development.

2.

Upon information and belief, Defendant Black Diamond Capital Appreciation Fund, LP ("BD Fund") is a Delaware limited partnership with its principal place of business located at 195 Maplewood Avenue, Maplewood, New Jersey 07040. The BD Fund is an investment hedge fund.

3.

Upon information and belief, Defendant Black Diamond GP, LLC ("BD GP") is a New Jersey limited liability company with its principal place of business located at 195 Maplewood Avenue, Maplewood, New Jersey 07040. BD GP is the general partner of the BD Fund and is responsible for the day to day operations and investments of the BD Fund.

4.

Upon information and belief, Defendant Black Diamond Investments, LP ("BD Investments") is a New Jersey limited partnership with its principal place of

2

business located at 195 Maplewood Avenue, Maplewood, New Jersey 07040.  BD Investments in an investment advisor for the BD fund.

5.

Upon information and belief, Defendant Black Diamond Investments, LLC ("BD Investments, LLC") is a New Jersey limited liability company with its principal place of business located at 195 Maplewood Avenue, Maplewood, New Jersey 07040. BD Investments, LLC is an investment advisor for the BD Fund.

6.

Defendants BD Fund, BD GP, BD Investments and BD Investments, LLC are sometimes hereinafter collectively referred to as the "BD Entities".

7.

Upon information and belief, Defendant Nicholas Lattanzio is an individual and resident of the State of New Jersey.  Upon and information and belief, Mr. Lattanzio owns and controls the BD entities.

8.

Upon information and belief, Defendant Ray Commisso is an individual and resident of the State of New Jersey.  Upon information and belief, Mr. Commisso serves as the chief investment officer of the BD Fund.

3

9.

Upon information and belief, Defendant International Lending Services ("International Lending") is an unincorporated entity with its principal place of business located in Southport, Connecticut.  International Lending is an agent and representative of the BD Entities.

10.

Upon information and belief, Defendant Pasquale Montesanti is an individual and resident of the State of Connecticut.  Mr. Montesanti owns and controls International Lending and is also an agent and representative of the BD Entities.

**JURISDICTION AND VENUE**

11.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case includes claims arising under the securities laws of the United States of America.  This Court has supplemental jurisdiction with regard to the state law claims pursuant to 28 U.S.C. § 1367.

12.

This Court has personal jurisdiction over each of the Defendants because they are domiciled in the State of New Jersey and within this judicial district or

they have conducted business within the State of New Jersey and this judicial district.

13.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## SUMMARY OF ALL FACTS

14.

In the spring/summer of 2014 HEI was seeking sources of financing for the development of a hotel located in Dalton, Georgia ("Project").

15.

In June, 2014 HEI was introduced by Greenside Strategies to the BD Entities and Mr. Lattanzio and was advised of the BD Entities' loan requirements and loan terms for the Project.

16.

Shortly thereafter, HEI was introduced to Mr. Montesanti and International Lending, who were agents and representatives of the BD Entities.  Mr. Montesanti and International Lending became HEI's primary contacts in conjunction with its efforts to obtain financing for the Project through the BD Entities and HEI's subsequent deposit of $1,950,000.00 with the BD Entities.

17.

In the summer of 2014, and in connection with the financing opportunity, Mr. Montesanti and International Lending presented HEI with a document entitled "Broad Terms of a Proposal to Provide Funding to HED III, LLC…") ("Funding Proposal").

18.

In the Funding Proposal, it was proposed that HEI would receive $8,875,0000.00 in financing though an unidentified third party lender.  In exchange, HEI would make a deposit to an equity deposit account at BD Fund in the amount $1,950,000.00.  In addition, should the lender fail to commit to the financing terms described therein within ninety (90) days, HEI could withdraw its deposit immediately.

19.

The Funding Proposal also discussed creating an entity called a Project SPV which would own all assets and revenues of the Project, including the real property.  The lender would be granted a majority interest in the Project SPV.

20.

In September 2014 the lender was identified as the BD Entities, consistent with the terms identified in the Funding Proposal.

21.

At the same time HEI received the Funding Proposal from Mr. Montesanti and International Lending it received additional documents including the Black Diamond Capital Appreciation Fund, LP Private Placement Memorandum, the Black Diamond Capital Appreciation Fund, LP Due Diligence Questionnaire and a Letter of Understanding which amended the terms of the aforementioned Private Placement Memorandum.

22.

The Black Diamond Capital Appreciation Fund, LP Private Placement Memorandum ("PPM") identified BD GP as the BD Fund general partner and BD Investments as the BD Fund investment advisor.  In other documents received from the BD Entities, BD Investments, LLC was identified as the BD Fund investment advisor.

23.

The PPM represented that the day to day operations of the BD Fund were managed by BD GP.

24.

The PPM represented that the BD Fund capital assets would be invested by the investment advisor.

25.

The PPM identified Mr. Lattanzio as the managing member of the general partner and of the investment advisor.

26.

The Black Diamond Capital Appreciation Fund, LP Due Diligence Questionnaire ("Due Diligence Questionnaire") represented that the BD Fund had $100 million under management and was capable of managing up to $1 billion without adding additional staff or equipment.

27.

The Due Diligence Questionnaire represented that the BD Fund would be managed by Mr. Lattanzio and Mr. Commisso, the chief investment officer.

28.

The Due Diligence Questionnaire represented that the BD Entities were solely owned by Mr. Lattanzio.

29.

The Due Diligence Questionnaire represented that Mr. Commisso would be responsible for all investment and hedging decisions.

30.

The Due Diligence Questionnaire represented that the BD Fund had average annual returns of 18% since 2008.

31.

The Due Diligence Questionnaire represented that HEI would have online access to account activity including, monthly letter, quarterly letter, monthly exposure report, monthly transparency report and annual audited financial statements.

32.

The Letter of Understanding ("LOU") which amended the PPM, required HEI to make an immediate deposit of $1,900,000.00 in the BD fund in order to obtain financing in the amount of $8,625,000.00.

33.

The LOU represented that HEI could withdraw 100% of its deposit after ninety (90) days if HEI had not received and accepted a funding commitment from the lender.

34.

Prior to August 21, 2014 the Defendants increased the requested deposit to $1,950,000.00 in exchange for increased financing in the amount of $9,750,000.00.

35.

The BD Entities represented that the HEI funds on deposit would be held in identified government securities or bank certificates of deposit.

36.

The representations contained in the PPM, Due Diligence Questionnaire and LOU were also made to HEI verbally on numerous occasions by the BD Entities.

37.

On August 21, 2014 and based on the aforedescribed representations, HEI wired $1,950,000.00 into the designated account for the BD Fund.

38.

Over the next several months Mr. Montesanti represented to HEI that funding was imminent.

39.

In September, 2014 Mr. Montesanti informed HEI that the BD Entities would be funding the Project and would acquire a majority interest in the Project

SPV which would own all assets, including the real property and revenues of the Project.

40.

During this same time the BD Entities expressed an interest in participating financially in two hotel developments under consideration by HEI in Costa Rica.

41.

By late 2014 it became apparent that financing from the BD Entities or their efforts in securing third party financing would not occur.

42.

During this time HEI began requesting immediate return of its deposit.

43.

Despite repeated representations by the Defendants that HEI's deposit would be returned any day, no deposit was returned to HEI.

44.

On December 12, 2014 Mr. Lattanzio represented to HEI that its interest in the BD Fund had earned $58,688.35.

45.

On December 18, 2014 HEI sent to Mr. Lattanzio and BD Investments written request for the return of the deposit.

46.

The BD Entities have failed and refused to return HEI's deposit in the amount of $1,950,000.00.

47.

Recently, HEI learned that on or about August 8, 2014 BD Fund filed a Form D with the United States Securities and Exchange Commission reporting that it had only sold $2 million in limited partnership interests in the BD Fund, despite previously representing that it was managing $100 million in the BD Fund.

48.

At no time has HEI received online access to the BD Fund or received in any form a monthly letter, quarterly letter, monthly exposure report, monthly transparency report, annual audited financial statements or any information concerning HEI's deposit with the BD Fund.

49.

The Defendants made the following misrepresentations of fact to induce HEI to make the deposit of $1,950,000.00 into the BD Fund:

A. HEI's deposit of $1,950,000.00 in the BD Fund was required by the lender to finance $8,625,000.00 in the Project and later increased to $9,750,000.00;

B. HEI may withdraw 100% of the deposit after ninety (90) days if HEI has not received and accepted a funding commitment from a lender;

C. The BD Fund has $100 million under management;

D. The BD Fund has average annual returns of 18% since 2008;

E. HEI would have online access to the BD Fund account activity including monthly letters, quarterly letters, monthly exposure reports, monthly transparency report and annual audited financial statements; and

F. The funds deposited of HEI in the BD Fund would only be used to purchase identified government securities or bank certificates of deposit.

50.

HEI relied on the aforedescribed misrepresentations of fact, believing them to be true, in deciding to deposit $1,950,000.00 in the BD Fund, to its detriment.

51.

Had HEI known of any of the aforedescribed misrepresentations of fact, HEI would not have deposited $1,950,000.00 in the BD Fund.

52.

The Defendants made the following material misrepresentations of fact after inducing HEI to deposit $1,950,000.00 in the BD Fund:

A. That funding of the financing was imminent;

13

B. That the BD Entities would be funding the Project and would take a majority interest in the Project SPV ; and

C. That as of November 30, 2014 HEI's deposit in the BD Fund had earned $58,688.35 in interest and capital gains.

53.

The aforedescribed representations made to induce HEI's investment in the BD Fund were materially false and misleading.   Each of the Defendants participated in or acquiesced issuance of said statements for the purpose of inducing HEI to deposit $1,950,000.00 in the BD Fund.

**COUNT I**
**VIOLATION OF § 10(b) OF THE**
**EXCHANGE ACT AND RULE 10 b-5**
**(AGAINST ALL DEFENDANTS)**

54.

HEI repeats and realleges the allegations contained in paragraphs 1 through 53 of this Complaint as if more fully set forth herein.

55.

In order to induce HEI to invest in the BD Fund, Defendants made numerous misrepresentations of material facts upon which HEI relied.   These misrepresentations were made in conjunction with HEI's deposit with the BD

Fund. As specifically detailed above, these misrepresentations were made orally and in writing and included, among others:

 A. Claims that HEI would be permitted to withdraw its deposit immediately and without penalty if HEI had not received and accepted a funding commitment within ninety (90) days from the date of its investment;

 B. Claims that the BD Fund had $100 million under management and had average annual returns of 18% since 2008;

 C. Claims that HEI would have online access to account activity and receive monthly letters, quarterly letters, monthly exposure reports, monthly transparency reports and annual audited financial statements; and

 D. Claims that HEI's funds would be used only to purchase identified government securities or bank certificates of deposit.

56.

In order to induce HEI to forgo its withdrawal from the BD Fund, Defendants made numerous misrepresentations of material fact upon which HEI relied. As specifically detailed above, these misrepresentations were made orally and in writing and included the following:

 A. Claims that the BD Entities would be funding the Project;

 B. Claims that securing a loan commitment was imminent; and

15

C. Claims that as of November 20, 2014 HEI's deposit had earned $58,688.33.

57.

At the time the Defendants made the materially false and misleading statements described above, they specifically knew that the representations were false and intended that HEI would rely on them when deciding whether to invest in the BD Fund and whether to subsequently withdraw its investment.

58.

In addition to these material misrepresentations, Defendants knowingly and intentionally omitted to disclose material facts which were necessary to make the representations made, in light of the circumstances under which they were made, not misleading, including those heretofore described.   HEI reasonably relied on Defendants' representations and thus were materially harmed by their omissions. As detailed herein, such omissions include, the following:

A. Informing HEI that the BD Fund did not have $100 million under management and had not averaged annual returns of 18% since 2008;

B. Informing HEI that its funds were used to purchase only identified government securities or bank certificates of deposit; and

16

C. Informing HEI that its funds were not subject to withdrawal as represented.

59.

HEI reasonably relied upon the false and misleading representations and omissions heretofore described concerning facts of which HEI was not aware.  HEI was induced to invest $1,950,000.00 in the BD Fund and delayed its withdrawal of the same.

60.

As a direct result of the foregoing, HEI has suffered and incurred damages in an amount to be determined at trial, in the amount of at least $1,950,000.00.

## COUNT II
## VIOLATION OF § 20(a) OF THE EXCHANGE ACT
## (AGAINST LATTANZIO, COMMISSO AND MONTESANTI)

61.

 HEI repeats and realleges the allegations contained in paragraphs 1 through 60 of this Complaint as if more fully set forth herein.

62.

Mr. Lattanzio, Mr. Commisso and Mr. Montesanti violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

63.

At all times material and pertinent hereto, Mr. Lattanzio, Mr. Commisso and Mr. Montesanti had the power, both direct and indirect, to control the BD Entities and International Lending and did, in fact, exercise such control by generally controlling these entities and the misrepresentations and omissions alleged herein.

64.

As a result of their control of the BD Entities and International Lending, Mr. Lattanzio, Mr. Commisso and Mr. Montesanti were controlling persons as defined in § 20(a) of the Securities Exchange Act of 1934.

65.

As a result of the conduct of Mr. Lattanzio, Mr. Commisso and Mr. Montesanti described herein, HEI has suffered damages in an amount to be determined at trial, but not less than $1,950,000.00.

**COUNT III**
**COMMON LAW FRAUD**
**(AGAINST ALL DEFENDANTS)**

66.

HEI repeats and realleges the allegations contained in paragraphs 1 through 65 of this Complaint as if more fully set forth herein.

67.

The Defendants knowingly and intentionally made material misrepresentations and omissions to HEI as heretofore mentioned, in conjunction with HEI's deposit in the BD Fund to induce HEI to invest in the BD Fund.  As referenced heretofore, the misrepresentations made orally and in writing included the following:

A.  Claims that HEI would be permitted to withdraw its deposit immediately and without penalty if HEI had not received and accepted a funding commitment within ninety (90) days from the date of its investment;

B.  Claims that the BD Fund had $100 million under management and had average annual returns of 18% since 2008;

C.  Claims that HEI would have online access to account activity and receive monthly letters, quarterly letters, monthly exposure reports, monthly transparency reports and annual audited financial statements; and

D.  Claims that HEI's funds would be used only to purchase identified government securities or bank certificates of deposit.

68.

In order to induce HEI to delay or forego its withdrawal from the BD Fund, Defendants made several misrepresentations of material fact upon which HEI relied.

69.

As heretofore mentioned, these misrepresentations made orally and in writing included the following:

A. Claims that the BD Entities would be funding the Project;

B. Claims that securing a loan commitment was imminent; and

D. Claims that as of November 20, 2014 HEI's deposit had earned $58,688.33.

70.

Defendants knowingly and intentionally omitted to disclose material facts. HEI reasonably relied on Defendants' representations and was harmed by their omissions. As heretofore mentioned, such omissions include the following:

A. Informing HEI that the BD Fund did not have $100 million under management and had not averaged annual returns of 18% since 2008;

B. Informing HEI that its funds were used to purchase only identified government securities or bank certificates of deposit; and

20

C. Informing HEI that its funds were not subject to redemption as represented.

71.

As a result of the unlawful conduct referenced above, HEI has suffered damages in an amount to be determined at trial, but not less than $1,950,000.00.

**COUNT IV**
**BREACH OF CONTRACT**
**(AGAINST THE BD ENTITIES)**

72.

HEI repeats and realleges the allegations contained in paragraphs 1 through 71 of this Complaint as if more fully set forth herein.

73.

HEI entered into a contract with the BD Entities.  Pursuant to the contract HEI was entitled to withdraw its entire investment without penalty if HEI had not received and accepted a funding commitment within ninety (90) days of HEI's investment in the BD Fund.

74.

HEI made its investment in the BD Fund on August 21, 2014.  No funding commitment was received and accepted by HEI within ninety (90) days thereafter.

As a result thereof, HEI became entitled to withdraw its investment from the BD Fund on November 20, 2014.

75.

HEI has attempted to exercise its contractual right to withdraw its investment in the BD Fund after November 20, 2014.

76.

The BD Entities have failed and refused to honor HEI's withdrawal request, in breach of the contract with HEI as well as in breach of the covenant of good faith and fair dealing implied in this contract.

77.

As a result of the Defendants' breach of contract, HEI has suffered damages in an amount to be determined at trial, but not less than $1,950,000.00.

**JURY DEMAND**

78.

HEI hereby demands a jury trial of this matter.

WHEREFORE, HEI respectfully requests this honorable Court to award judgment as follows:

1. On Count I award damages in an amount not less than $1,950,000.00 plus interest, punitive damages, and expenses of litigation including reasonable attorneys fees.

2. On Count II award damages in an amount not less than $1,950,000.00 plus interest, punitive damages, and expenses of litigation including reasonable attorneys fees.

3. On Count III award damages in an amount not less than $1,950,000.00 plus interest, and expenses of litigation including reasonable attorneys fees.

4. Grant such other and further relief as the Court deems just, proper and equitable.

Respectfully submitted,

LAW OFFICE OF
FORREST SCOTT TURKISH
Local Attorney for Plaintiff,
HEI Investments, LLC

By: _____

Forrest  S. Turkish
LAW OFFICE OF
FORREST SCOTT TURKISH
595 Broadway, Ground Floor
Bayonne, NJ  07002
(201) 339-8866
fsturkish@aol.com

23

FRIEDMAN, DEVER & MERLIN, LLC
Attorneys for Plaintiff
HEI Investments, LLC


By:

H. Michael Dever (*pro hac vice* application
*to be filed*)
Georgia Bar No. 219785
mdever@fmdlaw.com
Genevieve Dame*(pro hac vice application
to be filed)*
Georgia Bar No. 142229
gdame@fdmlaw.com

FRIEDMAN, DEVER & MERLIN, LLC
5555 Glenridge Connector, NE
Suite 925, Glenridge Highlands
Atlanta, GA 30342-4728
(404) 236-8600

(Forrest/HEI.cpt.doc)

24