<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEI INVESTMENTS, LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>BLACK DIAMOND CAPITAL<br>APPRECIATION FUND, LP, et al.,<br><br>                Defendants. | Civil Action No. 15-746 (ES) (MAH)<br><br>OPINION |

**S**ALAS, **D**ISTRICT **J**UDGE

Pending before the Court is the motion to vacate default and compel arbitration filed by Defendants Black Diamond Capital Appreciation Fund, LP; Black Diamond GP, LLC; Black Diamond Investments, LP; Black Diamond Investments, LLC, (collectively, the "BD Entities"); and Nicholas Lattanzio.[1] (D.E. Nos. 7, 8). The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). Upon review of the parties' submissions, the Court grants Defendants' motion to vacate default and denies Defendants' motion to compel arbitration pending fact discovery.

**I.    FACTS & PROCEDURAL HISTORY**

In 2014, Plaintiff HEI Investments, LLC ("HEI") was seeking financing for a hotel development project located in Dalton, Georgia (the "Project"). (D.E. No. 1, Complaint

---

[1] Ray Commisso, International Lending Services, and Pasquale Montesanti are also named as Defendants in the instant case. On April 10, 2015, Commisso filed an Answer to the Complaint. (D.E. No. 12). On December 23, 2015, the Court entered a stipulation of dismissal as to Commisso. (D.E. No. 26). On March 19, 2015, HEI requested the Clerk to enter default as to Montesanti and International Lending Services. (D.E. No. 6). That same day, the Clerk of the Court entered default as to Montesanti and International Lending Services. (D.E. dated 03/19/2015). Montesanti and International Lending Services have not joined the instant motion to vacate.

1

("Compl.") ¶ 14). In June 2014, HEI was introduced to Defendant Lattanzio and his hedge fund comprised of the BD Entities. (*Id.* ¶ 15).

Shortly thereafter, HEI was introduced to Defendants International Lending Services and Pasquale Montesanti. (*Id.* ¶ 16). According to HEI, International Lending and Montesanti are agents and representatives of the BD Entities. (*Id.*). International Lending and Montesanti made a proposal for HEI to receive the funding necessary for the Project. (*Id.* ¶ 17). Pursuant to the proposal, HEI would receive $8,875,000 in financing through an unidentified lender. (*Id.* ¶ 18). In exchange, HEI would deposit $1,950,000 into an equity fund with the BD Entities.[2] (*Id.*). The proposal allowed HEI to withdraw its deposit if a lender was not secured within ninety days. (*Id.*).

In furtherance of the proposal, HEI received numerous documents and agreements, including: the Black Diamond Appreciation Fund, LP Private Placement Memorandum; the Black Diamond Capital Appreciation Fund, LP Due Diligence Questionnaire; and the Letter of Understanding. (*Id.* ¶¶ 21, 22, 26, 32). According to HEI, the Letter of Understanding states that HEI could withdraw one hundred percent of its deposit if a lender was not secured within ninety days. (*Id.* ¶ 33).

On August 21, 2014, HEI wired $1,950,000 to the BD Entities in accordance with the proposal. (*Id.* ¶ 37). In September 2014, Montesanti informed HEI that the BD Entities would fund the Project as the lender. (*Id.* ¶ 39). However, it soon became apparent that the BD Entities were unable to fund the Project. (*Id.* ¶ 41). Accordingly, HEI requested return of its $1,950,000 deposit. (*Id.* ¶ 42). HEI asserts that despite its written requests and the BD Entities' repeated

---

[2] The Complaint contains a few discrepancies with respect to the financing and deposit amounts. In paragraph 32 of the Complaint, Plaintiff alleges that the Letter of Understanding listed the deposit as $1,900,000 in exchange for financing in the amount of $8,625,000. (Compl. ¶ 32). Plaintiff also alleges that the deposit was increased to $1,950,000 in exchange for increased financing in the amount of $9,750,000. These discrepancies do not, however, affect the Court's analysis with respect to either motion.

representations that they would refund the deposit, HEI has yet to receive the $1,950,000 deposit. (*Id.* ¶¶ 43, 45-46).

On February 2, 2015, HEI filed the Complaint. (D.E. No. 1). HEI asserts: (1) a claim against all named Defendants for violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10 b-5; (2) a claim against Lattanzio, Commisso, and Montesanti for violation of § 20(a) of the Exchange Act, 15 U.S.C. § 78a; (3) a common law fraud claim against all named Defendants; and (4) a breach of contract claim against the BD Entities. (*See* Compl. ¶¶ 54-77).

On March 17, 2015, HEI requested the Clerk of the Court to enter default as to Lattanzio and the BD Entities for their failure to answer or appear. (D.E. No. 4). The Clerk entered default the following day. (D.E. dated 3/18/2015). HEI has not filed a motion for default judgment as to Lattanzio or the BD Entities.

On April 6, 2015, Lattanzio and the BD Entities filed the instant motion to vacate default and compel arbitration. (D.E. Nos. 7, 8). According to Lattanzio, a copy of the Complaint was served on his girlfriend, Margaret Brinkerhoff, on February 24, 2015. (D.E. No. 8-3, Defendants' Letter Brief in Support of Motion to Vacate Default and Compel Arbitration ("Def. Ltr. Br.") at 2). Lattanzio did not believe that service was properly effectuated since he was not married to Brinkerhoff. (*Id.*). Furthermore, Lattanzio asserts that he did not receive a copy of the Summons and Complaint that was allegedly served on the BD Entities through their registered agent on February 20, 2014. (*Id.*).

Nevertheless, Lattanzio retained counsel to represent himself and the BD Entities on March 26, 2015. (*Id.* at 3). At Lattanzio's request, counsel sought to vacate the defaults in order to file a responsive pleading. (*Id.*). HEI's counsel denied the request. (*Id.*). Subsequently, Lattanzio's

3

attorney provided HEI with a copy of the June 30, 2014 Investment Management Agreement[3] in order to facilitate arbitration. (D.E. No. 8-2, Ex. A, Investment Management Agreement ("Agr")). HEI was not receptive to arbitration and indicated that it intended to seek default judgment against Lattanzio and the BD Entities. (*Id.*).

After Lattanzio and the BD Entities filed the instant motion, HEI requested an adjournment to promote settlement discussions. (*See* D.E. No. 14, April 30, 2015 Letter). The Court subsequently granted the adjournment. (D.E. No. 15). Settlement discussions were unsuccessful, however, and HEI filed an opposition to the instant motion on May 18, 2015. (D.E. No. 17). The motion is now ripe for adjudication.

## I.     DISCUSSION

### A. Motion to Vacate Clerk's Entry of Default

The Third Circuit "has adopted a policy disfavoring default judgments and encouraging decisions on the merits." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988). Accordingly, a court may set aside the entry of default for good cause. Fed. R. Civ. P. 55(c). When considering a motion to set aside or vacate the entry of default, a court must consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in United States Currency*, 728 F.2d 192, 195 (3d Cir. 1984). Although motions to vacate the entry of default and motions to vacate default judgment utilize the same factors, the former is held to a lesser standard. *See Mike Rosen & Assocs., P.C. v. Omega Builders, Ltd.*, 940 F. Supp. 115, 120-21 (E.D. Pa. 1996) ("[I]t is clear that federal courts grant relief from

---

[3] The June 30, 2014 Investment Management Agreement was not named or referenced in the Complaint.

a default entry more readily and with a lesser showing than . . . in the case of a default judgment." (internal quotation marks omitted)).

Regarding the first factor, prejudice accrues due to the loss of evidence, increased potential for fraud or collusion, or a substantial reliance on the judgment. *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). Here, the Court concludes that HEI would not suffer prejudice and that the first factor weighs in favor of vacating the entry of default. HEI contends that the longer the BD Entities remain in possession of the $1,950,000 deposit, the less likely it is to recover the money, which would prejudice HEI. (D.E. No. 17, Plaintiff's Opposition to Defendants' Motion to Vacate Defaults and Compel Arbitration ("Pl. Opp. Br.") at 12-13). However, Lattanzio and the BD Entities correctly contend that HEI is not yet entitled to the $1,950,000. (D.E. No. 20, Defendants Reply Letter ("Def. Reply Ltr.") at 2). The docket only contains the Clerk's Entry of Default; HEI must file a motion for default judgment and establish a sufficient cause of action for each claim in the Complaint before the Court may enter judgment against Defendants. To date, HEI has not filed a motion for default judgment. Furthermore, Lattanzio and the BD Entities expeditiously filed the instant motion to vacate—within two weeks of the entry of default. Because judgment has not been entered and the instant motion was filed in a timely fashion, the Court concludes that HEI will not be prejudiced if the Court vacates the entry of default.

Regarding the second factor, a meritorious defense is one that would constitute a complete bar to the action at trial. *$55,518.05 in U.S. Currency*, 728 F.2d at 195. Here, the Court concludes that Defendants have failed to establish the existence of a meritorious defense, but that this neither weighs in favor, nor against, vacating the entry of default. HEI asserts a common law fraud claim, an Exchange Act fraud claim, and a breach of contract claim against the BD Entities. (Compl. ¶¶

5

54-60, 66-77). The BD Entities contend that they possess a meritorious defense because Plaintiff's allegations fail to meet the particularity requirement for fraud claims under Federal Rule of Civil Procedure 9. (Def. Mov. Ltr. at 3). Such an argument is not, however, one that would completely bar an action at trial. *See $55,518.05 in U.S. Currency*, 728 F.2d at 195. Rather, this is a pleading sufficiency argument that could be cured through an amended complaint. Accordingly, the Court concludes that this is not a meritorious defense.

Furthermore, the BD Entities contend that "most of the alleged misrepresentations were actually made by defendants Montesanti and International Lending." (Def. Mov. Ltr. at 3). If the BD Entities were to establish this allegation at trial, it could be a complete bar to liability. However, the contention that "most" of the misrepresentations were made by others implies that some of the misrepresentations were allegedly made by the BD Entities. As such, it is possible that the BD Entities would have to defend against the remaining misrepresentations that were not made by Montesanti and International Lending. Therefore, the BD Entities have failed to establish a defense that would constitute a complete bar to HEI's claims premised on misrepresentations.

Finally, the BD Entities failed to address HEI's breach of contract claim. As such, they have not established a meritorious defense to this claim.

With respect to Lattanzio, HEI asserts two claims under the Exchange Act and a common law fraud claim. (Compl. ¶¶ 54-60, 66-71). Lattanzio contends that he possesses a meritorious defense because he was acting in his capacity as a principal of the BD Entities, rather than in a personal capacity. (Def. Mov. Ltr. at 4). Although this argument may suffice as a defense to the fraud claims, the Securities Exchange Act allows for individual liability. *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992) ("Section 20(a) imposes joint and several liability on any person who controls a person liable under any provision of the Securities Exchange Act of 1934."

(internal quotation marks omitted)). Therefore, Lattanzio has not demonstrated a meritorious defense to all of the claims asserted against him.

In any event, the Court concludes that Defendants' failure to assert a meritorious defense is not fatal. Indeed, the Third Circuit disfavors default judgments and encourages decisions on the merits. *Harad*, 839 F.2d at 982. Moreover, courts within this circuit are split as to the dispositive nature of this factor. *Compare Allstate Ins. Co. v. Hopfer,* No. 08–4549, 2009 WL 1362612, at *3 (E.D. Pa. May 14, 2009) (granting vacatur while holding that motion to vacate would not be denied on lack of meritorious defense alone), *and Toy v. Haman*, No. 07–3076, 2008 WL 5046723, at *4 (D.N.J. Nov. 20, 2008) (allowing vacatur despite lack of specific presentation of meritorious defenses), *with Foundation Structures, Inc. v. Safeco Ins. Co. of Am.*, No. 08–4763, 2009 WL 2602431, at *4–5 (E.D. Pa. Aug. 24, 2009) (denying motion but granting the movant thirty days to submit meritorious defenses), *and Days Inn Worldwide, Inc. v. Jerbev Corp.*, No. 08–1659, 2009 WL 249244, at *2 (D.N.J. Feb. 2, 2009) (denying motion but allowing the movant twenty days additional time to show a meritorious defense). Given that the other two factors weigh so heavily in favor of vacating the entry of default, the Court concludes that the failure to demonstrate a meritorious defense is not fatal to the motion for vacatur.

Regarding the third and final factor, the Court concludes that Defendants' delay was not due to culpable conduct. Establishing a defendant's willfulness or bad faith leading to the entry of default suffices to constitute culpable conduct. *World Entm't Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012). Based on the facts presented to the Court, there does not appear to be any willfulness or bad faith that led to default. Plaintiff served the BD Entities on February 20, 2015 and Lattanzio on February 24, 2015. (*See* D.E. No. 4). Lattanzio asserts that he believed he was improperly served because a copy of the Complaint was left with his girlfriend, to whom he is not

married. (Def. Mov. Ltr. at 2; D.E. No. 8-2, Certification of Nicholas Lattanzio in Support of the Black Diamond Defendants' Motion to Vacate Defaults and Compel Arbitration ("Lattanzio Cert.") ¶ 5). Although this argument is legally incorrect,[4] it establishes that Lattanzio did not act in bad faith by failing to answer. Furthermore, Lattanzio asserts that he did not receive a copy of the Summons and Complaint that were served upon the BD Entities. (Def. Mov. Ltr. at 2; Lattanzio Cert. ¶ 4). Despite this, Lattanzio retained counsel for himself and the BD Entities on March 26, 2015—a little more than a month after service was effectuated. (*See* Def. Mov. Ltr. at 3). Counsel expeditiously sought to rectify the matter by asking HEI's counsel to vacate the defaults. (Def. Mov. Ltr. at 3). After HEI's counsel denied the request, Lattanzio and the BD Entities filed the instant motion. (*Id.*). As such, the Court concludes that Defendants did not act in bad faith.

Furthermore, the Court notes that default *judgment* had not yet been entered. Defendants moved to vacate the Clerk's entry of default less than a month after it was entered. Given this, and the procedural posture discussed above, the Court concludes that vacatur is warranted in favor of adjudication on the merits. Accordingly, the Court grants Defendants' motion to vacate the Clerk's entry of default.

### B. Motion to Compel Arbitration

In addition to the motion to vacate the Clerk's entry of default, Defendants seek to compel arbitration. Because "[a]rbitration is a matter of contract between the parties," a judicial mandate to arbitrate must be predicated upon the parties' consent. *Par–Knit Mills, Inc. v. Stockbridge*

---

[4] Pursuant to Federal Rule of Civil Procedure 4(e)(2)(B), service can be effectuated by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." The Federal Rules do not require a marital relationship. Rather, they require that a copy of the Summons and Complaint be left with "someone of suitable age . . . who resides there." Fed. R. Civ. P. 4(e)(2)(B).

*Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).  The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, et seq., enables a court to enforce a contract to arbitrate, but requires that it shall be "satisfied that the making of the agreement for arbitration . . . is not in issue" before it orders arbitration.  *Id.* § 4.  "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Par–Knit Mills, Inc.*, 636 F.2d at 54.

On a motion to compel arbitration, the Court must determine whether "(1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement" before granting the demand. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549, and 950646*, 584 F.3d 513, 523 (3d Cir. 2009).  According to the Third Circuit, if arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) motion to dismiss standard of review should be applied.  *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 774 (3d Cir. 2013).  On the other hand, where the face of the complaint fails to establish that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, the Third Circuit has determined that granting a motion to compel arbitration under a Rule 12(b)(6) standard would not be appropriate.  *Id.*  In those instances, either further factual development is needed or, if the Court is presented with evidence placing the arbitrability question in issue, the issue must be decided under the Rule 56 summary judgment standard.  *Id.*  If the court determines that further factual development is necessary, it may deny the motion pending discovery and entertain a renewed motion to compel under a summary judgment standard.  *Id.* at 776.

Pursuant to *Guidotti*, the Court looks to the Complaint to determine whether there is an "express, unequivocal agreement" to arbitrate. *Id.* at 773 (quoting *Par-Knit Mills, Inc.*, 636 F.2d at 54). Lattanzio and the BD Entities moved to compel arbitration based on the arbitration clause contained in the July 30, 2014 Investment Management Agreement between HEI and Black Diamond Investments, LLC (the "Agreement"). (*See* Def. Mov. Ltr. at 4; *See* Agr.). The Complaint does not mention or refer to the Agreement.[5] Furthermore, the Agreement is not attached as an exhibit to the Complaint. Thus, arbitrability is not apparent on the face of the Complaint, and a Rule 12(b)(6) standard is inapplicable.

Given that arbitrability is not apparent on the face of the Complaint, the Court concludes—pursuant to *Guidotti*—that Defendants' motion to compel arbitration is denied pending further factual development. *See Guidotti*, 716 F.3d at 774 (stating that when "arbitrability [is] not . . . apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record").

Moreover, the Court concludes that further discovery is necessary given the fact intensive nature of the arguments raised by the parties. Lattanzio and the BD Entities concede that only Black Diamond Investments, LLC is a signatory to the Agreement. (Def. Mov. Ltr. At 4). Nevertheless, they assert that the non-signatories have the authority to compel arbitration based on the theory of equitable estoppel. (Def. Reply Br. at 5). Essentially, Lattanzio and the BD Entities

---

[5] The Complaint references "a document entitled 'Broad Terms of a Proposal to Provide Funding to HED III, LLC . . .'" (Compl. ¶ 17); the "Black Diamond Capital Appreciation Fund, LC Private Placement Memorandum," (*id.* ¶ 22); the "Black Diamond Capital Appreciation Fund, LP Due Diligence Questionnaire," (*id.* ¶ 26); and the "Letter of Understanding," (*id.* ¶ 32). However, none of these documents can be construed as the Agreement. Furthermore, Count Four of the Complaint alleges that "HEI entered into a contract with the BD Entities." (*Id.* ¶ 73). However, it is unclear whether HEI is referring the Agreement or some other contract with the BD Entities, especially given the fact only Black Diamond Investments LLC is a signatory to the Agreement, rather than all of the BD Entities.

argue that the close relationship between the BD Entities enables the non-signatories to compel HEI to arbitrate under the Agreement. (Def. Mov. Ltr. at 4-5).

In *E.I. Dupont de Nemours and Co. v. Rhone Poulenc Fiber*, the Third Circuit recognized that a non-signatory can be compelled to arbitrate based on principals of contract and agency law, including theories such as third party beneficiary, agency/principal, and equitable estoppel. *See* 269 F.3d 187, 195 (3d Cir. 2001). Here, however, the non-signatories are attempting to compel a signatory to arbitrate, which some courts have recognized as a possibility under *Dupont*. *See Aluminium Bahrain B.S.C. v. Dahdaleh*, 17 F. Supp. 3d 461, 477 (W.D. Pa. 2014); *Torres v. CleanNet, U.S.A., Inc.*, No. 14-2818, 2015 WL 500163, at *8 (E.D. Pa. Feb. 5, 2015).

Under New Jersey law, to determine whether a non-signatory can compel a signatory to arbitrate under a theory of equitable estoppel, a court should focus its analysis on the "agency relationship between the parent and subsidiary corporations in relation to their intertwinement with the plaintiff's claims and the relevant contractual language." *Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 860 (2013). Furthermore, the doctrine of equitable estoppel requires a showing of detrimental reliance. *Id.* at 858.

Applying this standard to the instant case, the Court must evaluate: (1) the relationship of the BD Entities; (2) whether or not that relationship intertwines with HEI's claims and the relevant contractual language; and (3) whether or not the non-signatory BD Entities detrimentally relied on HEI's conduct under the Agreement. The BD Entities have not, however, provided the Court with sufficient factual allegations to determine the applicability of equitable estoppel.

Accordingly, the Court denies Defendants' motion to compel arbitration pending limited fact discovery. Defendants may file a renewed motion to compel arbitration within thirty (30) days of the close of discovery.

## III. CONCLUSION

For the reasons set forth above, Defendants' motion to vacate the Clerk's entry of default is granted. Defendants' motion to compel arbitration is denied pending fact discovery. Defendants may file a renewed motion to compel arbitration within thirty days of the close of discovery. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**